**Affirmed and Memorandum Opinion filed June 25, 2013.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-12-00613-CR

---

### GREGORY T. JOSEFSBERG, Appellant

### V.

### THE STATE OF TEXAS, Appellee

---

**On Appeal from the County Criminal Court at Law No. 9**
**Harris County, Texas**
**Trial Court Cause No. 1816811**

---

## M E M O R A N D U M   O P I N I O N

A jury convicted appellant, Gregory T. Josefsberg,[1] of the misdemeanor offense of interference with public duties, and the trial court assessed punishment at 180 days' confinement in county jail, but suspended his sentence and placed him on community supervision for two years. Appellant challenges his conviction in six issues, arguing that the statute under which he was convicted is

---

[1] Appellant is an attorney who represented himself both at trial and on appeal.

unconstitutionally void for vagueness and that the evidence is insufficient to support his conviction. We affirm.

## BACKGROUND

Appellant, a family law attorney, appeared for docket call at around 9:30 a.m. on March 20, 2012, in the 247th Civil District Court in Harris County, Judge Bonnie Hellums presiding. After answering the docket call, appellant left the courtroom and went outside into the hallway to speak with his client and wait to be called back into the courtroom for trial. His opposing counsel, Don Cahilly, was also outside the courtroom speaking to Cahilly's client. Two other attorneys, Eric McFerren and Katrina Griffith, were in the hallway that morning and testified at appellant's trial. There were numerous other people outside the courtroom in the hallway that morning; witnesses testified that there were anywhere from fifty to one hundred people in the hallway.

That particular morning, Judge Hellums had forty to fifty cases on her docket, with around fifty to sixty people in her courtroom. It became noisy outside the courtroom and that noise interfered with Judge Hellums' ability to conduct business inside the courtroom. As was her usual practice, she sent her bailiff, Harris County Sheriff Office (HCSO) Deputy Mark Thierry, into the hallway outside her courtroom to ask people to move away from the courtroom doors and to keep their voices down. According to witnesses, Deputy Thierry came into the hallway and asked the people outside the courtroom, including appellant, to move down the hallway away from the courtroom doors.[2] Other than appellant, everyone began moving away from the doors.

_____

[2] Judge Hellums testified that she directed Deputy Thierry to step into the hallway and move people away from the doorway. Thierry went into the hallway twice that morning to clear the courtroom doorway area, and the altercation between appellant and the deputy arose the second time the deputy went into the hallway. Deputy Thierry testified that Judge Hellums

2

Deputy Thierry asked appellant to move away from the doorway to the courtroom; appellant responded that the deputy needed to "ask nicely." Appellant refused to move away from the courtroom doors. Thierry told appellant that they could "discuss this here or go down the hallway and discuss it." Appellant continued to refuse to move away from the doorway and began to raise his voice. Deputy Thierry attempted to escort appellant away from the courtroom doorway and into the nearby clerk's office, but appellant refused to cooperate. According to various witnesses, appellant "resisted" Thierry by "chest bumping him,"[3] "planting his feet," "trying to escape from the [d]eputy's grasp," and beginning to "flail his arms around." Appellant also shouted for help and yelled, "Call 911."

Deputy Thierry explained that when he tried to move appellant away from the crowd to talk to him, appellant became combative. According to Thierry, he attempted to escort appellant around the corner from the courtroom to the clerk's office to "restrain him." When Thierry opened the door to the clerk's office, appellant went "limp" and fell to the ground, pulling Thierry down on top of him. During the fall, Thierry was struck in the arm with what was later found to be an ink pen. After Thierry fell on top of appellant, Thierry was able to turn appellant onto his stomach and handcuff him.

Appellant was arrested and charged by information with the offense of interference with public duties. The State alleged that appellant

> on or about MARCH 20, 2012, did then and there unlawfully with criminal negligence, namely PULLING . . . M. THIERRY TO THE FLOOR, interrupt, disrupt, impede and interfere with M. THIERRY, a

directed him to clear the hallway the first time, but that she did not instruct him to clear the hallway the second time.

[3] Deputy Thierry did not recall appellant "chest bumping" him but stated that appellant "got too close" to him.

3

peace officer, while M. THIERRY was performing a duty and exercising authority imposed and granted by law.

A jury found appellant guilty as charged, and the trial court sentenced him to 180 days' confinement in county jail. The trial court suspended his sentence and placed him on community supervision for two years. Appellant filed a motion for new trial, which was overruled by operation of law. This appeal followed.

## CONSTITUTIONALITY OF STATUTE

In his first issue, appellant asserts that the statute under which he was convicted, Texas Penal Code section 38.15, is unconstitutionally vague. This statute provides, in pertinent part, "A person commits an offense if the person with criminal negligence interrupts, disrupts, impedes, or otherwise interferes with . . . a peace officer while the peace officer is performing a duty or exercising authority imposed or granted by law. . . ." Tex. Penal Code § 38.15(a)(1).

Appellant did not challenge the constitutionality of this statute in the trial court. *See* Tex. R. App. P. 33.1(a)(1) (requiring that, to preserve an issue for appeal, the record must show that the complaint was made to the trial court). Appellant moved for a directed verdict at the close of the State's case, but he did not complain or assert that Penal Code section 38.15 was unconstitutional of. *See id.*; *see also Freeman v. State*, 340 S.W.3d 717, 730 (stating that the appellant did not preserve his constitutional challenge to Texas capital murder statute by failing to raise issue before trial court). Appellant also failed to challenge the constitutionality of this statute in his motion for new trial. Appellant waived this complaint.

Moreover, appellant's vagueness challenge rests on the definition of the culpable mental state for this offense, criminal negligence: "Who knows what the State will argue in opposition to the argument that the statute that defines criminal

negligence is void for vagueness. Their response is eagerly awaited." A person is criminally negligent

> with respect to circumstances surrounding his conduct or the result of his conduct when he ought to be aware of a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint.

Tex. Penal Code § 6.03(d). The Court of Criminal Appeals of Texas has already determined that this statute is not unconstitutionally vague. *See Phillips v. State*, 588 S.W.2d 378, 381 (Tex. Crim. App. 1979) (en banc) (op. on reh'g) (overruling constitutional vagueness challenge to criminal negligence definition and concluding that the definition of criminal negligence "adequately describes the prohibited conduct and gives proper notice of the conduct forbidden").

Appellant also fleetingly complains that section 38.15 is unconstitutional because it "fails to be sufficiently definite to avoid chilling protected expression"[4] and "fails to establish determinate guidelines for law enforcement." Both of these challenges to this statute have been previously rejected by this court in *Duncantell v. State*. 230 S.W.3d 835, 844, 846 (Tex. App.—Houston [14th Dist.] 2007, pet. ref'd) (holding that conduct that "interrupts, disrupts, impedes, or interferes with a peace officer performing a duty imposed by law is not expressive conduct protected by the First Amendment" and concluding that the statute adequately details the prohibited conduct such that it is not relegated to (a) the subjective

---

[4] Appellant couches this complaint as a constitutional vagueness challenge. However, a challenge that a statute, in addition to proscribing activities that are constitutionally forbidden, sweeps within its coverage speech or conduct that is protected by the First Amendment, is actually an overbreadth challenge to the constitutionality of the statute. *Duncantell v. State*, 230 S.W.3d 835, 843 (Tex. App.—Houston [14th Dist.] 2007, pet. ref'd).

interpretation of law enforcement officers or (b) improperly motivated selective enforcement).

For the foregoing reasons, appellant's first issue is overruled.

## SUFFICIENCY OF THE EVIDENCE

In his second through sixth issues, appellant challenges the sufficiency of the evidence to support his conviction. As noted above, appellant was charged by information with "unlawfully with criminal negligence, namely PULLING . . . M. THIERRY TO THE FLOOR, interrupt[ing], disrupt[ing], impede[ing] and interfere[ing] with M. THIERRY, a peace officer, while M. THIERRY was performing a duty and exercising authority imposed and granted by law."

When reviewing the sufficiency of the evidence, we view all of the evidence in the light most favorable to the conviction and determine, based on that evidence and any reasonable inferences from it, whether any rational fact finder could have found the elements of the offense beyond a reasonable doubt. *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010); *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007); *see also Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The jury is the exclusive judge of the credibility of witnesses and the weight to be given their testimony. *See Isassi*, 330 S.W.3d at 638. Further, we defer to the jury's responsibility to fairly resolve or reconcile conflicts in the evidence, and we draw all reasonable inferences from the evidence in favor of the verdict. *Id.*

We address appellant's third and sixth issues first, in which he challenges the sufficiency of the evidence regarding the allegations related to Deputy Thierry. In his third issue, appellant asserts that there is insufficient evidence to establish that Deputy Thierry was a peace officer. In issue six, appellant challenges the

6

sufficiency of the evidence to support the jury's finding that Thierry was performing a duty or exercising authority imposed and granted by law.

The term "peace officer" includes sheriffs and their deputies. *See* Tex. Code Crim. Proc. art. 2.12(1). Deputy Thierry testified that he had been employed by the HCSO for twenty-three years. He testified that on the date of the incident, he was assigned to the 247th District Court as a bailiff. He explicitly testified that he was a "peace officer" with the HCSO. His former supervisor, HCSO Sergeant John Wong, described various rotations for HCSO deputies, including assignments to the court division as bailiffs.

Viewing this evidence in the light most favorable to the jury's verdict, we conclude that a rational fact finder could have found that Thierry was a peace officer beyond a reasonable doubt. *See id.*; *see also Deltenre v. State*, 808 S.W.2d 97, 99–101 (Tex. Crim. App. 1991) (noting that "sheriffs and their deputies" are peace officers and distinguishing a case in which evidence was sufficient to establish jailer was peace officer based on testimony that jailer was a deputy sheriff, *Eickenhorst v. State*, 662 S.W.2d 622 (Tex. App.—Houston [14th Dist.] 1983, pet. ref'd), and one in which evidence was insufficient based on testimony that jailer was neither a certified peace officer nor a deputy sheriff, *Deltenre v. State*, 776 S.W. 2d 807, 808 (Tex. App.—Fort Worth 1989), *aff'd by Deltenre*, 808 S.W.2d at 98). Accordingly, we overrule appellant's third issue.

Regarding evidence that Thierry was performing a duty or exercising authority imposed or granted by law at the time of the incident, appellant argues, several witnesses presented evidence concerning the duties of Deputy Thierry in his capacity as a bailiff. Judge Hellums testified that, on the morning of March 20, 2012, she instructed Thierry to go into the hallway and move people away from the courtroom doorway. Judge Hellums described Thierry's job duties as follows:

"His job is to protect me and to protect the attorneys in the courtroom and to help with the smooth administration of justice." She stated that his duties involved giving directions both inside and outside the courtroom. Judge Hellums testified that one of her standing morning announcements is that if anyone needs to talk, they should step outside the courtroom and move to the left or to the right, but should not stand right outside the courtroom because noise travels into the courtroom and makes it very difficult to hear testimony. She stated that Deputy Thierry is tasked with enforcing that order.

In her testimony, Associate Judge Meca Walker of the 247th District Court made reference to section 21.001 of the Texas Government Code, entitled "Inherent Power and Duty of Courts," to the jury. This statute provides that a court has all powers necessary for the exercise of its jurisdiction, is required to conduct proceedings in an orderly and expeditious manner, and is required to control the proceedings so that justice is done. Tex. Gov't Code § 21.001(a), (b). Associate Judge Walker testified that when she asks the bailiff to "quiet things down" outside the courtroom so that she may conduct business inside the courtroom, she is operating under the authority of this statute. Additionally, attorney Katrina Griffith testified she is familiar with family courts and that Deputy Thierry was performing his duty by following orders from Judge Hellums at the time of the offense.

Deputy Thierry testified that his duties as a bailiff included "[c]are, custody, and control." He explained that it is his job to take care of staff and people in the courtroom, as well as to control the courtroom and "keep it orderly." According to Thierry, he routinely goes into the hallway at the behest of Judge Hellums to ask people to keep the noise down because it is interfering with proceedings in the courtroom. Thierry stated, "As a peace officer, particularly in the Harris County Sheriff's Department, my duties do not stop at a wall or window. . . [I]t is my job

8

to react at any and every offense that I see no matter if it's in the building or in the street."

Considering this evidence in the light most favorable to the jury's verdict, a rational juror could have determined that Deputy Thierry was performing a duty or exercising authority imposed and granted by law at the time that appellant committed this offense. *See id.*; *cf. Berrett v. State*, 152 S.W.3d 600, 604–05 (Tex. App.—Houston [1st Dist.] 2004, pet. ref'd) (concluding sufficient evidence supported the appellant's conviction for interference with public duties where there was evidence that officer was exercising authority imposed or granted by law). Thus, we overrule appellant's sixth issue.

In his second, fourth, and fifth issues, appellant asserts that the evidence is insufficient to support those allegations related to his actions. In issue two, he challenges the sufficiency of the evidence to support the finding that he was criminally negligent. Appellant provides a single legal authority in the argument section of his brief in support of this issue: a citation to *Marbury v. Madison*, 5 U.S. 137 (1803). Although this landmark decision certainly informs of both the relationship between statute and constitution and our role to uphold the constitution, it provides no guidance on the issue of whether appellant's behavior was criminally negligent. Thus, he has waived this issue by failing to properly brief it. *See* Tex. R. App. P. 38.1(i) ("The brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record.").

Further, the State alleged that appellant was criminally negligent by pulling Deputy Thierry to the floor. Appellant challenges the sufficiency of the evidence to support the jury's finding that he pulled Thierry to the floor in his fourth issue; thus issues two and four are intertwined. Deputy Thierry testified that appellant

9

purposefully pulled him to the ground by "going limp." He described appellant's behavior as follows: "As I opened the door [to the clerk's office] he throws himself on the ground[,] pulling me on top of him." Although appellant asserts that the testimony of an employee of the clerk's office, Raven Hubbard, conflicted with Thierry's, it is the jury's responsibility to fairly resolve or reconcile any conflicts in the evidence. *See Isassi*, 330 S.W.3d at 638. Moreover, Hubbard testified that she believed appellant purposefully fell down. She agreed that appellant "went limp" and that Deputy Thierry "fell on him."

Although appellant testified that Thierry threw him to the ground, the jury was entitled to disbelieve appellant's testimony and to believe Deputy Thierry's testimony. *See id.* Indeed, Thierry's version of the event finds some support in Hubbard's description of the incident. And, Thierry's testimony established that appellant deliberately fell to the ground, pulling Thierry down with him. Viewing the evidence in the light most favorable to the verdict, we conclude that a rational fact finder could have concluded, beyond a reasonable doubt, that appellant pulled Deputy Thierry to the floor. Further, this evidence is sufficient to establish that appellant acted, at a minimum, with criminal negligence. *See* Tex. Penal Code § 6.02(d), (e) (stating that "proof of a higher degree of culpability than that charged constitutes proof of the culpability charged" and that an intentional mental state is of a higher degree of culpability than a criminally negligent mental state); *cf. Boyd v. State*, 217 S.W.3d 37, 43 (Tex. App.—Eastland 2006, pet. ref'd) (holding that evidence was legally sufficient to support conviction for interference with public duty because jury could infer from the appellant's act in pulling away from officer who was trying to investigate possible noise violation that the appellant intentionally and knowingly impeded and interfered with the officer's investigation).

Accordingly, we overrule appellant's second and fourth issues.

In appellant's fifth issue, he contends that the State failed to present sufficient evidence that pulling Deputy Thierry to the floor interrupted, disrupted, impeded, *and* interfered with him. But the jury was charged that it could find appellant guilty of this offense if it determined appellant interrupted, disrupted, impeded, *or* interfered with Deputy Thierry's duties by pulling him to the floor.[5] The jury was entitled to consider all the evidence discussed above. This evidence, viewed in the light most favorable to the verdict, establishes that appellant's behavior was very disruptive to Deputy Thierry while he was performing his duty of keeping the courtroom area orderly and quiet during court proceedings. Not only was appellant verbally combative with the deputy, but he refused to follow Thierry's instructions, resisted detention, and physically pulled Thierry to the ground. In the process of pulling Thierry to the ground, Thierry was injured by being stabbed with a pen.

After reviewing all of the evidence in the light most favorable to the conviction, we conclude that a rational fact finder could have found beyond a reasonable doubt that appellant's actions in pulling Thierry to the floor interrupted, disrupted, impeded, or interfered with Deputy Thierry's performance of his duties. *See Isassi*, 330 S.W.3d at 638; *cf. Barnes v. State*, 206 S.W.3d 601, 605–06 (Tex. Crim. App. 2006) (concluding evidence was sufficient to support conviction for interference with public duties where appellant moved her vehicle forward during a traffic stop, disobeyed officer's commands to keep her hands visible during the stop, and shouted to her child to "run"); *Boyd*, 217 S.W.3d at 43 (explaining that jury could infer from appellant's pulling away from officer that he intentionally

_____

[5] The jury charge tracks the disjunctive language of the statute. *See* Tex. Penal Code § 38.15(a).

11

and knowingly impeded the officer's investigation); *Berrett*, 152 S.W.3d at 604–05 (holding that defendant's action of repeatedly moving his arm out of officer's reach to prevent officer from placing him in handcuffs was a voluntary action that interfered with the officer's duty).

For these reasons, we overrule appellant's fifth issue. Having overruled all six of appellant's issues, we affirm the trial court's judgment.


/s/    Sharon McCally
Justice

Panel consists of Justices Frost, McCally, and Donovan.

Do Not Publish — Tex. R. App. P. 47.2(b).